# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN NOHEMI AYALA,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | Case No. 1:25-cv-00599-SAB<br>ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY<br>(ECF Nos. 13, 15) |

Plaintiff Karen Nohemi Ayala ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument.

Plaintiff requests the final decision of Commissioner be reversed and the case be remanded for further proceedings, arguing that the decision below was not supported by substantial evidence. Specifically, Plaintiff argues that the Administrative Law Judge ("ALJ") erred in the analysis of Plaintiff's subjective testimony, as well as the evaluation of certain medical and lay opinions.

For the reasons explained herein, the Court will affirm the decision of the Commissioner.

/ / /

## I.

## BACKGROUND

### A. Agency Procedural History

On May 25, 2022, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, and a Title XVI application for supplemental security income, alleging disability beginning February 1, 2021, for both applications. (ECF No. 11, Administrative Record ("AR"), 17.) Plaintiff's application was initially denied on December 30, 2022, and denied upon reconsideration on April 17, 2023. (Id.) Plaintiff requested a hearing before an ALJ. On March 28, 2024, Plaintiff, represented by counsel, appeared via a telephonic hearing in front of an ALJ. (Id.) Plaintiff and vocation expert ("VE") Joel Greenberg testified. (Id.) On May 31, 2024, the ALJ issued a decision concluding that Plaintiff was not disabled. (AR 38.) On April 2, 2025, the Appeals Council denied Plaintiff's request for review. (AR 1-5.)

### B. The ALJ's Findings of Fact and Conclusions of Law

In the decision, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act through June 30, 2024, and she had not engaged in substantial gainful activity since February 1, 2021, the alleged disability onset date. (AR. 19.) The ALJ found that Plaintiff had the following severe impairments: diabetes with polyneuropathy and gastroparesis, gastroesophageal reflux disease (GERD), erosive gastritis, celiac disease, degenerative disc disease of the lumbar and thoracic spine, partial tear of left rotator cuff, right knee arthritis, obesity, depression, and anxiety. (AR 19-20.) However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed in impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 21.)

After considering the entire record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b) with the following modifications: occasional pushing or pulling with both legs; occasional pushing or pulling with both arms; occasional climbing of ramps or stairs; but never climbing of ladders, ropes or scaffolds; occasional stooping; occasional kneeling; occasional crouching; occasional crawling; and frequent, but not constant, handling and fingering with both hands.

Plaintiff could work where there was no exposure to hazards such as dangerous moving machinery or unprotected heights. Plaintiff was capable of understanding and remembering simple and detailed, but not complex, instructions. (AR 24-25.)

The ALJ found that the existence of and ability to perform past relevant work was expedited. (AR 36.) Then, the ALJ found that Plaintiff was 44 years old, and she had at least a high school education. (Id.) Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Id.) Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined by the Social Security Act, from February 1, 2021, through the date of decision, May 31, 2024. (AR 37-38.)

Plaintiff sought timely review of the Commissioner's final decision in the federal courts. (ECF No. 1.) The parties consented to the jurisdiction of the United States Magistrate Judge. (ECF Nos. 8, 9, 10.) Thereafter, the parties filed their briefs on the matter. (ECF Nos. 13, 15, 16.)

## II.

## LEGAL STANDARD

### A. The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining whether a claimant is disabled. 20 C.F.R. § 404.1520;[1] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

[1] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).[2] "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001); 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d

---

[2] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational Guidelines ("grids") or rely upon the testimony of a VE. See 20 C.F.R. § 404 Subpart P, Appendix 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" Ford, 950 F.3d at 1149, quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

**B. Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to affirm, modify, or reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence. 42 U.S.C. § 405(g); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "[T]he threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Rather, "[s]ubstantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Stiffler v. O'Malley, 102 F.4th 1102, 1106 (9th Cir. 2024), quoting Ford, 950 F.3d at 1154. In other words, "[s]ubstantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

Should the ALJ err, the Court will not reverse where the error was harmless. Stout, 454 F.3d at 1055-56. "An error is harmless only if it is 'inconsequential to the ultimate nondisability determination.'" Leach v. Kijakazi, 70 F.4th 1251, 1255 (9th Cir. 2023), quoting Lambert v. Saul, 980 F.3d 1266, 1278 (9th Cir. 2020). The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012), quoting Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012), quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Nor may the Court affirm the ALJ on a ground upon which he or she did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). It is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154, quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## III.

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred in three ways. First, Plaintiff argues that the ALJ failed to offer clear and convincing reasons for rejecting Plaintiff's subjective complaints. (ECF No. 13, pp. 11-15.) Second, Plaintiff contends that the ALJ erred in her analysis of the medical opinions of Ogochukwu Imo, M.D., and Shiveta Cherwoo, M.D. (Id. at pp. 16-20.) Third, Plaintiff argues that the ALJ did not provide a "germane reason" to discount the lay opinion of Plaintiff's sister. (Id. at pp. 20-22.) The Commissioner opposes, arguing that substantial evidence supports the ALJ's decision. (ECF No. 15.) The Court agrees with the Commissioner.

### A. Analysis of Plaintiff's Subjective Complaints

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014), quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). As relevant here, where the ALJ "determines that a claimant . . . is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms she alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Lambert, 980 F.3d at 1277, quoting Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015). "Ultimately, the 'clear

and convincing' standard requires an ALJ to show his work." Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022). An ALJ must show their work by "identify[ing] the testimony [from a claimant] she or he finds not to be credible and . . . explain[ing] what evidence undermines that testimony." Lambert, 980 F.3d at 1277, quoting Treichler v. Comm. of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014). Boilerplate statements and general summaries of the evidence, without more, are not enough. Id. at 1277-78. That said, an ALJ is not required "to perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." Id. at 1277.

While "an ALJ cannot insist on clear medical evidence to support each part of a claimant's subjective pain testimony when there is no objective testimony evincing otherwise, . . . [w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." Smartt, 53 F.4th at 498 (emphasis in original). Indeed, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008). "The standard isn't whether [a] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." Smartt, 53 F4th at 499.

In addition, an ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid," and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014). An ALJ may also consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007). For example, "the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012), superseded on other grounds by 20 C.F.R. § 404.1502(a). Additionally, "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the

extent that they contradict claims of a totally debilitating impairment." Id., citing Turner v. Commissioner of Social Sec., 613 F.3d 1217, 1225 (9th Cir. 2010).

In her brief, Plaintiff argues that she consistently reported significant pain symptoms from her impairments, including nausea, back pain, arm pain, leg pain, and depression. (ECF No. 13, p. 11.) In the decision, the ALJ summarized Plaintiff's testimony as follows:

> The claimant testified that she lived with her husband and three children ages 15, 22, and 25 years old. She said that she last worked in 2019, and stopped because she started to have medical issues including back pain. The claimant stated that she reapplied for the seasonal agricultural work in 2020, but due to the coronavirus pandemic they did not call a lot of people back to work. She testified that she does use an assistive device for ambulation but thinks she needs to use one. The claimant testified that she limits her walking because she has fallen a couple times due to her knees giving out. She denied having to seek medical attention for the falls. She testified that she started to experience a pinching sensation in her knees with walking for about an hour. The claimant said that she had experienced left leg numbness and tingling constantly for the past three years. She stated that she struggled to get up from the sofa and usually had her children help. The claimant testified that she experienced dizziness with prolonged standing. She said that she spent most of her time laying down.
>
> The claimant stated that she had not experienced any symptoms of gastroparesis for about a year prior to February 2024. She testified that she started vomiting again over the past two weeks and went to see her primary doctor. The claimant denied going to the emergency room (ER). She said that she had episodes of vomiting for approximately six months starting in late 2020. The claimant stated that her gastroparesis was controlled with medications but started to act up when she began to experience increased levels of stress associated with her husband potentially losing his job. She testified that surgical intervention was discussed but she only had a 50% chance of getting better. Upon questioning by her representative, the claimant said that she saw her primary doctor approximately three times a month.

(AR 25-26.)

Though the ALJ observed that the record showed some limitations, the ALJ found that "[the record] also documents improvements." (AR 26.) The ALJ then extensively went through the medical record, noting the improvements and other inconsistencies. For example, the ALJ noted that in December 2021, Plaintiff acknowledged feeling overall better after lifestyle changes

directed to help better control her diabetes, including that Plaintiff's pain had decreased from an eight on a 10-point scale to a six on a 10-point scale. (AR 26.) In addition, Plaintiff's anxiety and depression were greatly improved with increased motivation. (Id.) In February 2022, Plaintiff said she was feeling better and denied abdominal pain except for mild discomfort to the epigastric and bilateral sides of the abdomen. (Id., citing Ex. 5F.) In June 2022, Plaintiff admitted that therapy was previously helpful. (Id., citing Ex. 15F) In January 2023, Plaintiff was seen in follow up and reported that she was doing well. (Id.) This same month, Plaintiff's anxiety and depression were described as well-controlled. (Id., citing Ex. 25F.) Toward the end of the month, Plaintiff reported that she had not had an episode of emesis since her last visit in August 2022. (Id., citing Ex. 20F) In May 2023, Plaintiff reported that other than left shoulder pain she was doing well. (Id., citing Ex. 27F.)

The ALJ also observed that Plaintiff had admitted to having a moderate to heavy diet in August 2023. (Id.) In addition, Plaintiff stated that her gastroparesis symptoms had completely resolved. (Id. citing Ex. 25F.) Later in the month, Plaintiff acknowledged doing well and said that the left shoulder steroid injection was helpful. (Id., citing Ex. 27F.) In September 2023, Plaintiff acknowledged some mild improvement with Cymbalta. (Id.) Plaintiff's anxiety and depression were described as not well-controlled but improving as compared to the last visit. (Id., citing Ex. 25F). In November 2023, Plaintiff denied experiencing any hypoglycemia episodes or symptoms associated with low blood sugar. (Id., citing Ex. 30F.) Later in the month, Plaintiff's uncontrolled diabetes was noted to be improving. (Id., citing Ex. 27F.) In January 2024, she continued to report that her gastroparesis symptoms had completely resolved. (Id., citing Ex. 30F.)

The ALJ then addressed the fact that there is a "significant gap" in Plaintiff's "history of mental health treatment, which is not consistent with disabling levels of symptoms." (AR 26.) The ALJ noted that Plaintiff had not sought treatment between July 2020 and May 2022. (Id.) The ALJ then found that Plaintiff's described daily activities "were not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Id.) For example, the ALJ observed that in December 2021, Plaintiff stated that she was going to Mexico for three weeks. (Id., citing Ex. 5F.) In April 2022, Plaintiff was taking daily walks with her husband and

daughter. (Id.) In addition, Plaintiff was planning to go to Mexico for two weeks. (Id., citing, Ex. 7F.) In July 2022, Plaintiff said she went to the store daily. (Id., citing Ex. 15F.) In December 2022, Plaintiff endorsed shopping at department and grocery stores without alleging any significant social distress. (Id.) Plaintiff indicated that she intentionally spent much of the day indoors involved in activities such as cooking, watching television, listening to the radio, and performing occasional domestic chores. (Id., citing Ex. 18F.)

Next, the ALJ turned to Plaintiff being not "entirely compliant with treatment, which suggests that the symptoms may not have been as limiting as alleged in connection with this application." (Id.) In support of this finding, the ALJ cited that Plaintiff was discharged from physical therapy after only five sessions because Plaintiff had failed to attend multiple appointments. (Id., citing Ex. 3F.) In January 2022, Plaintiff acknowledged being noncompliant with diabetic medications for the past two weeks. (Id., citing Ex. 6F.) Later in the month, Plaintiff was not taking metoclopramide for gastroparesis, which was prescribed by her gastrointestinal specialists. (Id., citing Ex. 5F.) In February 2022, Plaintiff was not taking her diabetic medications. (Id., citing Ex. 6F.) In November 2023, Plaintiff declined a referral to physical therapy. (Id.) In January 2024, Plaintiff admitted that she was not compliant with her medications and healthy diet. (Id.) Later in the month, Plaintiff acknowledged that she had not been compliant with taking venlafaxine. (Id., citing Ex. 30F.)

The ALJ then went on to discuss, in depth, the medical evidence as it related to Plaintiff's vomiting, abdominal pain, back pain, diabetes, ER visits, left shoulder pain, her gait, activities of daily living, diet, GERD, numbness of left leg, medications, depression, mental health generally, and psychiatric issues. (AR 27-33.) All these discussions relate back to the broad issues of improvement, non-compliance, and contradictions between alleged symptoms and activities. Along with the sections outlined in detail above, the Court has reviewed this section from the ALJ's opinion (AR 27-33) and finds that the ALJ gave more than ample, clear and convincing, evidence to support her determination to not credit as true all of Plaintiff's testimony based on

improvement, non-compliance, and contradiction in the medical record.[3]

In support of Plaintiff's position that the ALJ erred in her analysis of Plaintiff's testimony, Plaintiff argues that her testimony is entirely consistent with the medical record. (ECF No. 13, p. 12.) For example, Plaintiff directs the Court to ER and primary care records that demonstrate Plaintiff had intractable nausea and gastroparesis. Yet, the ALJ directly discussed this issue. (AR 29.) Significantly, Plaintiff does not address that the ALJ also then observed that, "[i]n January 2023, the claimant was seen in follow up and reported that she was doing well and was compliant with her medications. Later in the month, the claimant denied experiencing abdominal pain, nausea or vomiting. She again reported doing well and being compliant with her medications (Ex. 25F)." (AR 30.) Thus, the ALJ did not ignore the evidence Plaintiff has directed the Court to; rather, the ALJ viewed the medical record longitudinally, finding that as a whole Plaintiff's symptoms regarding nausea and vomiting had improved.

Plaintiff makes similar arguments regarding her orthopedic pain and her mental health treatment. But, as with nausea and vomiting, the ALJ directly addressed these records. (AR 27-33.) While in Plaintiff's view the medical record is entirely consistent with her symptoms, as the ALJ discussed, this is not completely true. (See id.)

Perhaps recognizing this, Plaintiff then argues that the ALJ improperly viewed the medical record as demonstrating improvement as opposed to demonstrating that there was a recurring issue as to her GI issues and orthopedic conditions. Yet, the Court finds that what Plaintiff is asking the Court to do is to conduct a weight of evidence inquiry, which is not the proper function of judicial review. Again, an ALJ must show their work by "identify[ing] the testimony [from a claimant] she or he finds not to be credible and . . . explain[ing] what evidence undermines that testimony." Lambert, 980 F.3d at 1277, quoting Treichler, 775 F.3d 1090, 1102 (9th Cir. 2014). "The standard isn't whether [a] court is convinced, but instead whether the ALJ's rationale is clear enough that it

[3] The Court observes that the ALJ did credit as true some of Plaintiff's testimony. Recall that the ALJ found that Plaintiff had the RFC to perform light work with the following modifications: occasional pushing or pulling with both legs; occasional pushing or pulling with both arms; occasional climbing of ramps or stairs; but never climbing of ladders, ropes or scaffolds; occasional stooping; occasional kneeling; occasional crouching; occasional crawling; and frequent, but not constant, handling and fingering with both hands. Plaintiff could work where there was no exposure to hazards such as dangerous moving machinery or unprotected heights. Plaintiff was capable of understanding and remembering simple and detailed, but not complex, instructions. (AR 24-25.)

has the power to convince." Smartt, 53 F4th at 499. The Court finds the ALJ's in depth discussion meet this bar.

Plaintiff makes two final sub-arguments. First, Plaintiff takes issue with the ALJ's finding regarding Plaintiff's orthopedic conditions and depression. Plaintiff homes in on the ALJ's use of observing that Plaintiff "had improvement when compliant with treatment" in a summary paragraph. (ECF No. 12, p. 14.) Yet, this is only part of the story. In the decision, the ALJ discussed that,

> Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the substantial weight of the objective medical evidence that revealed improvement when compliant with treatment, the positive straight leg raise testing, the normal diabetic foot examination, the decreased range of motion of the lumbar spine, the mild findings upon EGD, the decreased sensation in the left lower extremity, the extent of her obesity, the intact motor strength in the left shoulder, the mild findings upon right knee xrays, the fact she declined a referral to physical therapy, the unremarkable physical examination in January 2024, the most often unremarkable mental status examinations, the significant gap in mental health treatment as well as the rather good extent of the claimant's activities of daily living that have included going to Mexico likely twice, taking daily walks, going to the store daily, cooking, watching television, listening to the radio and performing occasional domestic chores (Exs. 2F, 3F, 5F, 6F, 7F, 8F, 9F, 13F, 14F, 15F, 16F, 17F, 18F, 20F, 25F, 27F, 28F, 30F, 31F)

(AR 35.)

Thus, even assuming that the ALJ erred in relying on improvement (which the Court is not persuaded is correct), the ALJ gave this summary of why she discounted these aspects of Plaintiff's testimony, including objective medical evidence, declining physical therapy, gap in mental health treatment, and Plaintiff's activities. In other words, improvement was only part of the ALJ's rationale. Again, Plaintiff seemingly asks the Court to reweigh the record evidence in her favor on these issues by citing to records, but that is not persuasive.

Plaintiff further misconstrues this paragraph. Indeed, the Court notes that this paragraph is a *summary* of the ALJ's in depth discussion that preceded it; therefore, the point of this paragraph was not to go into the level of depth, issue by issue, with which Plaintiff has taken issue. Stated differently, improvement was one aspect supporting the ALJ's RFC *as a whole*, and this summary

paragraph was not intended to necessarily apply improvement in one or more aspects as applying to all aspects discussed in the summary.

Second, Plaintiff argues that her noncompliance relating to her diabetes and medication is explainable and that the ALJ failed to consider these explanations. Plaintiff argues that her "physician noted that her intractable nausea and gastroparesis impacted her ability to take oral medications, and that 'taking pills will make her throw up' [AR 654]." (ECF No. 13, p. 15.) This is inexact. On February 9, 2022, Plaintiff's primary care provider recorded that, "Patient states that she has not taken any of her diabetic medications nor has she taken the metoclopramide as she states she is scared that taking pills will make her throw up. Discussed with patient yet again the importance of her diabetic medications and the need for to resume taking them as directed to help improve her glycemic control and decrease further complications she may experience from having uncontrolled diabetes for such a long time." (AR 654.) Thus, the record clearly does not indicate what Plaintiff says it does. Rather, her primary care provider noted that Plaintiff stated that she has been noncompliant because she is scared taking pills will make her throw up. There is nothing in this record to support that Plaintiff's *doctor* determined "taking pills will make [Plaintiff] throw up."

A similar phenomenon occurs with Plaintiff's other example. "Plaintiff also noted that she was concerned about taking certain medications and told her physician that despite her prescription, her "gastroenterology specialist [advised her] that taking [it] for long periods of time is not advisable" [AR 1283]." (ECF No. 13, p. 15.) Yet, on August 18, 2022, Plaintiff's primary care provider recorded the following:

> During patient's most recent ER visit on Mon 8/15, patient advised to restart taking Reglan. Patient state she was hesitant to restart Reglan as she remembers being told by her GI specialist back in April that taking Reglan for long periods of time is not advisable. However, as she is experiencing worsening delay in gastric emptying, patient was advised by ER physician to resume taking the Reglan until she is evaluated by GI specialist once again. Patient states she was agreeable to resuming Reglan therapy because she was desperate for any type of improvement for her gastroparesis.

(AR 1283.)

Thus, at most, this narrative captured a discussion between Plaintiff and an ER doctor regarding the medication Reglan and Plaintiff's belief that taking Reglan for extended periods of time was inadvisable. This has nothing to do with Plaintiff's noncompliance of taking medication generally or specifically as to Plaintiff's diabetic medications.

Thus, the ALJ did not err by not explicitly discussing these explanations for noncompliance regarding Plaintiff's diabetes and medications to control it.

In sum, the ALJ did not err with regard to the evaluation of Plaintiff's subjective complaints.

**B. Analysis of Medical Opinions**

When an ALJ calculates a claimant's RFC, the ALJ is tasked with determining "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." SSR 96-8p, 1996 WL 374184, at *2 (emphasis in original). In other words, the "RFC does not represent the least an individual can do despite his or her limitations or restrictions, but the *most*." Id. (emphasis in original). An ALJ assesses an RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). This includes "any statements . . . provided by medical sources, whether or not they are based on formal medical examinations," as well as reviewing any "consultative examination(s)" and, where applicable, prior administrative medical findings ("PAMFs"). Id.

Under the Social Security Administration's 2017 revised regulations, "there is not an inherent persuasiveness to evidence from [government consultants] over [a claimant's] own medical source(s), and vice versa." Woods v. Kijakazi, 32 F.4th 785, 791 (9th Cir. 2022), quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844, 2017 WL 168819 (F.R. Jan. 18, 2017). "The most important factors" that the agency considers when evaluating the persuasiveness of medical opinions are "supportability" and "consistency." Id., quoting 20 C.F.R. § 404.1520c(a). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1). Consistency means the extent to which a

medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2). With that said, it remains for "the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020), quoting Treichler, 775 F.3d at 1098.

"The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." Woods, 32 F.4th at 792, citing 20 C.F.R. § 404.1520c(c)(3). Therefore, "an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records." Id., citing 20 C.F.R. § 404.1520c(c)(3)(i)-(v). That said, "the ALJ no longer needs to make specific findings regarding these relationship factors." Id.

**1. Ogochukwu Imo, M.D.**

Plaintiff argues that the ALJ erred in her analysis of Dr. Imo's opinions as to both supportability and consistency. The Court disagrees.

The ALJ summarized Dr. Imo's opinions as follows:

> In June 2022, Dr. Imo authored a physical assessment form. Diagnoses consisted of diabetic polyneuropathy, diabetic gastroparesis, chronic left shoulder pain, anxiety, and depression. He opined that the claimant was unable to lift any weight, would need to take unscheduled breaks during an eight hour workday for 30 to 60 minutes, could use the bilateral upper extremities for gross and fine manipulation 10% of the day, could use the bilateral upper extremities for reaching 0% of the day, would experience symptoms severe enough to interfere with the attention and concentration required to perform simple work-related task frequently as well as would be expected to miss more than four days of work per month. This opinion was based upon the claimant's diagnoses of diabetic polyneuropathy, chronic shoulder pain, diabetic gastroparesis, anxiety, and depression as well as medication side effects of drowsiness and dizziness(Ex. 11F).

(AR 33.)

> In June 2022, Dr. Imo authored a mental capacity assessment. The claimant had a marked limitation in the ability to handle conflicts with others and working a full day without needing more than the

> allotted number or length of rest periods. She had moderate limitation in the following abilities: keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness; responding to requests, suggestions, criticism, correction and challenges; managing psychologically based symptoms; sustaining an ordinary routine and regular attendance at work; as well as working at an appropriate and consistent pace or completing task in a timely manner. This opinion was based upon the claimant's history of anxiety and depression that limited her ability to endure stress for long periods of time. In addition, the claimant had several complications due to a long-standing history of uncontrolled diabetes (Ex. 29F).

(AR 34.)

Beginning with supportability, the ALJ found Dr. Imo's physical assessment opinion was not well supported by explanations as they only listed the claimant's diagnoses and side effects from medications without further clarification. (AR 34.) For Dr. Imo's mental assessment opinion, the ALJ found that the "opinion is not well supported by an explanation." (Id.)

Regarding consistency, the ALJ found Dr. Imo's physical assessment opinion

> to be unpersuasive because [it is] inconsistent with the treatment record that demonstrated improvement despite periods of noncompliance with treatment, the often intact motor strength in the upper and lower extremities, her usually normal gait, the normal diabetic foot examination as well as the claimant's ability to cook and perform occasional domestic chores (Exs. 2F, 3F, 5F, 6F, 7F, 8F, 9F, 13F, 14F, 15F, 16F, 17F, 18F, 20F, 25F, 27F, 30F).

(AR 34.) For the mental assessment opinion, the ALJ discussed that:

> The undersigned finds this opinion to be unpersuasive because the marked limitation is inconsistent with the treatment record that most often revealed alert attention, intact memory, good judgment, normal mood and affect as well as pleasant and cooperative behavior with some intermittently abnormal mental status examinations that showed depressed, irritable, and anxious mood, tearful affect as well as tangential and circumstantial thought process (Exs. 2F, 3F, 5F, 7F, 14F, 15F, 17F, 25F, 28F, 30F, 31F). Further, the record demonstrated improvement in her physical conditions when compliant with treatment (Exs. 2F, 3F, 5F, 6F, 7F, 8F, 9F, 13F, 14F, 15F, 16F, 17F, 20F, 25F, 27F, 30F).

(Id.)

To begin with, Plaintiff misconstrues the supportability factor. Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1). In other

words, how the medical source explains, in the opinion, the relevant objective medical evidence that supports the opinion. Instead, Plaintiff views supportability as looking to other treatment notes in the record, which—in reality—is part of how consistency is evaluated. Indeed, Plaintiff even cites that the other records she has noted are "consistent" with Dr. Imo's opinions. But, again, supportability looks to how the medical source supports its own opinion with objective medical evidence. Plaintiff even concedes that Dr. Imo "only listed the claimant's diagnoses and side effects from medications without further explanation." (ECF No. 13, p. 17; see id. at p. 20.) With that, the Court finds that the ALJ did not err in her supportability analysis as to Dr. Imo's opinions.

As to consistency, Plaintiff's argument is that for the reasons stated in her argument regarding Plaintiff's subjective complaints, the ALJ erred in her evaluation of the objective medical evidence because in Plaintiff's view, the evidence did not show improvement of Plaintiff's orthopedic, GI issues, and mental health issues. The Court reiterates that the ALJ properly evaluated Plaintiff's orthopedic, GI issues, and mental health issues, and therefore, for substantially similar reasons as stated in the Court's analysis in the section above, the ALJ did not err by finding the properly evaluated objective medical evidence as undercutting Dr. Imo's opinions.

**2. Shiveta Cherwoo, M.D.**

As with Dr. Imo, Plaintiff argues that the ALJ erred in her analysis of Dr. Cherwoo's opinion as to both supportability and consistency. The Court again disagrees.

The ALJ summarized Dr. Cherwoo's opinion as follows:

> In November 2023, Dr. [Cherwoo] authored a physical assessment form. Diagnoses consisted of left rotator cuff tear, degenerative disc disease of back and right knee arthritis. He opined the claimant was capable of performing sedentary work with the following modifications: frequently lift and carry less than 10 pounds; sit three hours of an eight hour workday; stand and walk two hours of an eight hour workday; would require three unscheduled breaks during an eight hour workday each lasting for an hour; able to use his bilateral upper extremities for fine and gross manipulation 70% of an eight hour workday; able to use the right upper extremity for reaching 70% of an eight hour workday; able to use the left upper extremity 20% of an eight hour workday; would experience symptoms severe enough to interfere with the

> attention and concentration required to perform simple work-related task frequently; as well as would be anticipated to miss more than four days of work per month. This opinion was based upon the claimant's diagnoses of left rotator cuff tear, degenerative disc disease, severe back pain and right knee arthritis(Ex. 26F).

(AR 33-34.)

For supportability, the ALJ found that Dr. Cherwoo's opinion was not well supported by explanations as they only listed the claimant's diagnoses and side effects from medications without further clarification. (AR 34.)

Regarding consistency, the ALJ found Dr. Cherwoo's opinion

> to be unpersuasive because [it is] inconsistent with the treatment record that demonstrated improvement despite periods of noncompliance with treatment, the often intact motor strength in the upper and lower extremities, her usually normal gait, the normal diabetic foot examination as well as the claimant's ability to cook and perform occasional domestic chores (Exs. 2F, 3F, 5F, 6F, 7F, 8F, 9F, 13F, 14F, 15F, 16F, 17F, 18F, 20F, 25F, 27F, 30F).

(Id.)

As with Dr. Imo, Plaintiff concedes that Dr. Cherwoo's opinion "only listed the claimant's diagnoses and side effects from medications without further explanation." (ECF No. 13, p. 18.) Also as with Dr. Imo, Plaintiff has misconstrued the supportability factor. Thus, the ALJ did not err in her analysis of supportability.

Plaintiff also makes the same argument regarding consistency for Dr. Cherwoo as she did for Dr. Imo. Thus, for substantially similar reasons as to why the ALJ did not err in Dr. Imo's consistency analysis, the Court finds that the ALJ did not err in Dr. Cherwoo's consistency analysis as well.

In sum, the ALJ did not err in her analysis of the medical opinions of Drs. Imo and Cherwoo.

**C. Analysis of Lay Opinion**

Plaintiff's final argument is that the ALJ erred by not giving a germane reason for discounting the lay opinion of Plaintiff's sister. The Court disagrees.

The ALJ summarized Plaintiff's sister's opinion as follows:

> The claimant's sister Kathy Fuentes authored a third-party function

> report in June 2022. She said her sister had difficulty with personal care activities. The claimant prepared complete meals once in a while. She did the laundry and went outside daily. Ms. Fuentes reported that the claimant got around by driving a car. She was able to manage her own finances. The claimant spent time with others in person and on the phone about once a week. She went to church and her parents' house on a regular basis. Ms. Fuentes said that the claimant had difficulty with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, seeing, climbing stairs, using her hands, following instructions, understanding, completing tasks as well as with her memory and ability to concentrate. The claimant was able to follow written and spoken instructions more or less. She got along with authority figures well. The claimant did not handle stress or changes in a routine well (Ex. 7E).

(AR 35.)

In analyzing this opinion, the ALJ discussed that,

> The undersigned considered the opinion in accordance with Social Security Ruling (SSR) 16-3p. Specifically, the undersigned considered the personal observations in terms of how consistent those observations are with the claimant's statements about their symptoms as well as with all the objective medical evidence in the file. Third party statements are not evaluated using the same criteria as medical source statements; however, they were considered to complete the narrative of the claimant's subjective complaints in accordance with accordance with and 20 CFR 404.1520b(c) and 416.920b(c). This statement is an overstatement of the claimant's symptoms. For example, Ms. Fuentes described the claimant losing balance and falling constantly, which is not documented in her medical records as discussed above, and further inconsistent with the fact that she does not use any assistive devices to walk.

(AR 35-36.)

Following the implementation of the 2017 regulations, ALJs "are not required to articulate how [they] considered evidence from nonmedical sources using the requirements [that apply to medical sources]." 20 C.F.R. §§ 404.1520c(d), 416.920c(d) (emphasis added). In light of the superseding regulations, that appear clear on their face, the Court seriously questions the propriety of the judicially created "germane reasons" requirement previously articulated by the Ninth Circuit. Compare Hudnall v. Dudek, No. 23-3727, 2025 WL 1379101, at *4 (9th Cir. May 13, 2025) (Bumatay, J., concurring) with id. at *3 (Graber, J., concurring).[4]

[4] Contrary to Plaintiff's suggestion, Hundall did not "decline to overrule" the germane reason analysis; rather the Ninth Circuit pointedly rejected reaching the issue, going out on a harmless error analysis. The Court does not read this as an endorsement of the continued use of the germane reason analysis.

Here, however, the Court need not wade into these riled waters because the ALJ gave germane reasons as to why she discounted the lay opinion of Plaintiff's sister. The ALJ found that the opinion was not consistent with the objective medical evidence as to the sister's opinion regarding balance and falling.[5]

**IV.**

**CONCLUSION AND ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is AFFIRMED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Karen Nohemi Ayala. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **August 21, 2026**

STANLEY A. BOONE
United States Magistrate Judge

[5] Even assuming there were any error, the Court finds that any such error was harmless. Miller v. Gammie, 335 F.3d 889, 893 (9th Cir. 2003). The opinion from Plaintiff's sister was cumulative of the record and of Plaintiff's own testimony. (See AR 361-68.)